## A. A. NEVINS & CO. v. W. F. & G. CHAPMAN.

In an action against the acceptor of a draft, where the defence set up is want of consideration, the burden of proof rests upon the defendants to show such want of consideration.

Where an agreement had been entered into between parties, to ship flour from Cincinnati to New Orleans, to be sold for a profit, and it appeared that such agreement had originated in a conversation, in which one of the parties urged, as a reason for the safety of such a transaction, the fact of his having English orders in hand, into which he could put the flour in case the market should have declined, on its arrival at New Orleans, to a point that would pay no profit—*Held*: That there is nothing necessarily immoral in such an agreement, within the meaning of Articles 1887 and 1889 of the Civil Code.

APPEAL from the Fourth District Court of New Orleans, *Price*, J.
*Singleton & Clack*, for plaintiffs. *Simonds & Fenner*, for defendant and appellant.

MERRICK, C. J. This suit is brought by the plaintiffs, as agents of *William Powell. Jr.*, to recover $426 87 upon defendant's acceptance of a draft for that amount drawn by plaintiffs to their own order upon defendants.

Judgment was rendered in favor of the plaintiffs, and one of the defendants, *W. F. Chapman* appeals.

The defence in this court is the want of consideration, and that the contract was against public order and good morals.

The burden of proof being upon the defendants to show the want of consideration, and it appearing affirmatively that the consideration of the acceptance was their proportion of a loss upon certain flour shipped from Cincinnati, there is no basis for the first ground urged in defence.

The other ground rests upon the answers of the real plaintiff, *Wm. Powell, Jr.*, to interrogatories. He says, " The origin of the transaction was a conversation with *Mr. Chapman*, when he was here, on the 7th of November, in which he suggested a shipment of flour, and urged, as one reason of its safety, the fact of his having English orders in hand, into which he could put the flour, in case the market should have declined, on its arrival at New Orleans, to a point that would pay no profit. This reason, and the waiving of New Orleans inspection, as stated in letters Nos. 3 and 4, induced me finally to make the shipment."

The appellant contends, that the contract was immoral, because there was a promise, in case of failure, to throw the loss upon innocent third parties, and he cites Art. 1887 C. C. See also 1889.

There is nothing necessarily immoral in the agreement, so far as we can perceive. It does not appear that the flour was to be shipped on account of the English orders above the market value, which would have been immoral. The conversation might well be understood to mean, that if the flour should happen to fall to the price limited by the English houses, that then it should be used to fill those orders without delay, and as defendant held such orders, that the flour could be sent forward without any great risk of loss.

Judgment affirmed.